under advisement. Our final case of the day is United States against Thornton. Good to see you again, Mr. Hillis. Good to see you, Judge Ganey. Mr. Hillis. Judge Easterbrook. My name is Daniel Hillis. I'm with the Federal Public Defender's Office. I represent Marcus Thornton on this case. He raises two issues and I will sound like I'm repeating myself, so I'll try to do as little of that as possible. Which you are. Indeed. So hopefully to good effect. I'm going to begin a little differently here. Post Thompson, there was a rush by district courts to get a handle on supervised release conditions. Unusually, the Southern District took the step, which I think is unparalleled in any district court across the country, of rebranding standard conditions that were in the guidelines, discretionary conditions that are in the statute, and calling them administrative conditions that are a new class of condition, never heard of before, and said that they were requirements in all cases where there's supervision. I've heard the government explain and said so in its brief, this is from Thompson, but page 378 of Thompson does not have this. This is something that was created by the judges in the Southern District of Illinois, and it's been unfair to the defendants in these cases who labor under the conception that these conditions are a requirement, that they're essential to all cases of supervision. We know that that's not the statutory conditions of supervision. When the judges take it upon themselves to impose discretionary conditions, they have to do so within the limits of the statute, and the statute does not have nine administrative conditions that are always required. So if the judges are laboring under the misconception that these are requirements, that affects due process. They're imposing them in every case. What leads you to think that the district judge believed that these were legally required? Paragraph 134 of the PSR said that they were. No, I'm asking what makes you think the judge believed this? Did Judge Reagan say anything to that effect? He adopted the PSR. Okay, I take it the answer is no, the judge never said anything. No, judge didn't say anything at the sentence other than to adopt the PSR, so the best evidence that we have, Judge Easterbrook, is what's in the PSR and what did the judge do with it. The judge made corrections to other statements in the PSR, mind you, did not correct paragraph 134 given the thought that these were other than requirements. Normally judges will correct the pre-sentence report only if somebody objects, but we agree that nobody objected here. No, but he sui sponte corrected other provisions in the PSR here, Judge, so that's maybe a contrary example to the normal practice, but he could have done it with something else that he thought was incorrect, and that leads me to believe that he thought this was correct, and of course it's not under the statute 3583 D and 3563 B, so everything of record suggests that the judge, by adopting the PSR that said the requirements, by having the meeting that they had post-Thompson that's cited in the 28 J letter that we filed that refers to these things again as requirements, Judge Easterbrook, I think that all suggests very strongly that Judge Reagan indeed thought these were requirements. But he did notify counsel at the outset they could request any additional discussion regarding sentencing, and he gave plenty of opportunity for discussing it. There wasn't any. Well, his discussion at that point, Judge, was tailored to the length of the sentence really, which brings me to another point because, I mean, nobody recognized this. They should have. It's an incorrect statement of the law that started with the probation office, continued through the adoption of the PSR, nobody caught it. It's a miss, like we've had in United States v. Jenkins, where criminal history, and I believe Your Honor authored that decision, where criminal history is brought in, we know that it affects the guideline range, this sentence is incorrect, you get a remedy under plain air review. It would be a similar thing here with the conditions of supervised release, which of course can lead to additional imprisonment through a revocation proceeding. But more particularly, Judge, if I may move, because I think we belabored the point about supervised release conditions, I would like to talk about the other factors that the judge did not address. So at the beginning of the sentencing hearing, the government said to the judge, you should take into account when imposing sentence, the mitigating effect of him foregoing the carpenter issue. That's never accounted for later on. The government says, well, the judge knew about it, he mentioned at the beginning, that's not enough. You have to account for it through the imposition of the sentence, and that didn't happen. Same thing with the military service. This was something that was mentioned in the allocution, it was included in the memorandum, and the judge never accounted for it. We know under Porter v. McCollum that you can undo a death penalty sentence if they unfairly discount military service when imposing sentence. This is a flat-out miss. This was never accounted for. But this isn't exactly like the situation in Morris, is it? Morris, at the end of Morris, you've talked about this in your brief, and I know you know Morris as well as you know the law in this area. Morris is a question mark. But here, Judge Reagan asked, do you want any further amplification of the 3553 factors? Why isn't that sufficient at that point, to put it on defense counsel to say, yes, absolutely we do, judge. I haven't heard you, you know where I'm going with that. Sure, that's a very fair question, Judge Scudder, and I think that the natural response to anybody who has asked the question is, I've addressed these 3553A factors and said what I've said of them. Do you need further amplification of these things? That doesn't clue a defense attorney in about things that you've missed. Are you supposed to shore up the record for the district court and say, judge, you did not address these other mitigating factors, and I'd like you to do so now. What you're gonna do is appeal proof the decision for the... You're supposed to give an honest answer so that errors can be avoided, rather than, as one lawyer famously said repeatedly in the Watergate trial, I'm putting that in my pocket for appellate review. Nobody did that. We're supposed to prevent errors. Nobody did that here because there was not an adequate Garcia-Segura inquiry, Judge, so if they had asked that question, I think that we would be in a different position, but that's not the question that was asked. We have something different from Morris and different from Garcia-Segura. If you ask me, have you addressed all my principle mitigating arguments, and I say yes, that doesn't say, what about the arguments that I failed to address? There's a little hair splitting that's going on in our law here, and I understand that, but when you look at Donnelly, Donnelly's not a situation where the judge has said anything further, question mark. Donnelly's one where they said, would anybody like any further elaboration? That is awfully close to what Judge Reagan did here. Elaboration about what? The points I've discussed, I think is the natural reading of this. Do you need further elaboration of the things I've considered? Are you supposed to say, Judge, here's the list of things that you didn't... And in Donnelly, we said you can't sit silent. If there's an issue, you gotta speak up. Not silent. I think that he was responding in the moment to the question that the judge asked, Judge Scudder. And if the judge wanted to be more pointed about things, he should have been, but he wasn't. That does not result in waiver under Garcia-Segura. You don't need to go down and ask about each sentencing factor and say, you don't have anything... What about this, Judge? What about this? Right. We're not... Nobody's trying to sandbag the judge here. I'm saying that in the moment, in the discourse that was happening in the district court, the question was asked, I've addressed these factors that you have talked about now. It wasn't, have I failed to address any other factors? That's the problem that happened here. So we don't have Carpenter, the Carpenter issue addressed. The government said was mitigating and should be addressed. We don't have his age, his health, aging out of the criminal conduct that he was engaged in, nothing about the military. So these are all problems. This is passing over in silence, Judge Scudder. So this is a Cunningham issue. This is not a Garcia-Segura problem. We've got... If I had a group of issues, the judge said, I've spoken on these, made the inquiry, do I need to say anything else further than those? That's waiver. But this is a camp of issues, a group of issues that's a different pot. And so the Garcia-Segura analysis doesn't apply here. We have a Cunningham problem. These were not addressed. And with that, I reserve the balance of my time. Thank you. May it please the court. My name is Derrick Wiseman. Mr. Wiseman, again. Yes, Your Honor. And I'm still here today on behalf of the United States of America. Mr. Thornton's arguments in this appeal fail for the discussion articulated in that oral argument earlier today. Unless this court has any further questions on these issues, we will elect to stand on our briefs, Your Honors. And we respectfully request that this court affirm the sentence imposed by the district court below. Thank you. Thank you, Your Honor. Anything further, Mr. Hillis? There's not much to reply to. There is an important point to reply to. It's this, Judge. The waiver is supposed to be knowing and intelligent relinquishments of rights Garcia-Segura sets up something for district courts to help avoid issues on appeal. But if we don't follow what those mechanisms are, the district court's judgment can't be rescued. And so the government's trying to avail itself of an inapt analysis here by relying on Garcia-Segura when, again, we have a Cunningham problem. So if we are going to allow this to be done, which this is a lifeline that the Court of Appeals has offered to the district court judges, they have to do it the right way. Dot your t's, ask the right questions. It's not some sort of wholesale provision to guard against appeal the way that the government's using it and the way that they're asking you to affirm here. We're asking that the issues that were not discussed, that should have been discussed, the recognized valid mitigating arguments under case law we've cited, the adequately addressed... And if you feel, if he feels at that time they should have been discussed and should have been an issue, you didn't raise them. Well, the trial counsel didn't say anything further because he didn't know that he was supposed to say anything other than the factors the judge did address, which he didn't need additional amplification on. That was well understood. The problem, again, are the issues that the judge didn't address. That's the Cunningham problem. I think it's a different problem. I have nothing further. Thank you. Thank you. The case is taken under advisement and the court will be in recess.